IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF TEXAS
                              FORT WORTH DIVISION

| | | |
|---|---|---|
| **PETER MEROLA,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-00389-O |
| | § | |
| **TEXAS CHRISTIAN UNIVERSITY,** | § | |
| | § | |
| Defendant. | § | |

## FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Peter Merola, hereinafter called Plaintiff, complaining of and about Texas Christian University, hereinafter called Defendant, and for cause of action would show the Court the following:

### PARTIES AND SERVICE

1.  Plaintiff, Peter Merola, (hereinafter "Merola") is an individual whose address is 10351 Crestgate Terrace, Apt. 206, Raleigh, North Carolina 27617. The last three digits of Plaintiff's driver's license number are 687. The last three digits of Plaintiff's Social Security number are 821.

2.  Defendant, Texas Christian University (hereinafter "TCU" or "Defendant") is a domestic nonprofit corporation based in Texas and may be served with process by serving the registered agent of said company, Victor J. Boschini, Jr., 3101 Bellaire Drive North, Suite 3200, Fort Worth, Texas 76129. Service of said Defendant as described above can be effected by personal delivery.

## JURISDICTION AND VENUE

3. The action arises under 42 U.S.C. Section 1983 et seq. as hereinafter more fully appears.

4. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

5. This is an action under Title 42 U.S.C. Section 12101 et seq. to correct unlawful practices on the basis of disability.

## CONDITIONS PRECEDENT

6. All conditions precedent to jurisdiction have occurred or been complied with a charge of discrimination was filed with the Texas Workforce Commission within one hundred and eighty days and with the Equal Opportunity Commission within three hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Opportunity Commissions' issuance of a right to sue letter.

## FACTS

7. Merola is a 30-year-old male with a diagnosis of, and continues to suffer from, a degenerative lumbar disc, spinal stenosis, an autoimmune disorder and allergy-induced asthma. Merola received these diagnoses several years ago.

8. On August 12, 2019, TCU hired Merola as an 'Information Security Administrator IV'. Merola was trained, educated and qualified for this position.

9. On August 14, 2019, a mere two days after his date of hire, Merola submitted a request for accommodation to his supervisor, Aaron Munoz and Martha Gonzalez in TCU's human resources department to better complete his job duties and tasks. Merola advised that he had a

herniated disc in his low[er] back and spinal stenosis and that he has autoimmune conditions. Merola further explained: "it does not allow me to be comfortable sitting, standing, and moving around for long periods without ergonomic equipment and close parking." Merola simply requested "ergonomic computer/desk equipment for office use and a reserved parking spot" as he already had a handicap placard issued by the Texas Department of Safety.

10. In response to Merola's request for accommodation, TCU requested extensive medical documentation prior to providing any such requested accommodation. Merola provided TCU the requisite documentation and health care provider affirmed Merola suffers from allergy-induced asthma, a degenerative lumbar disc, and recommended an accommodation of a "clean and ergonomic environment."

11. However, Merola never received the ergonomic equipment. Instead, his medical conditions began to circulate amongst his colleagues and Merola began to face ridicule, bullying, and harassment in the workplace.

12. Specifically, on multiple occasions, after parking in a handicapped parking spot, using his handicap placard, Merola's immediate supervisor, Aaron Munoz would challenge his reasoning for parking in that spot in an open and hostile manner to degrade and humiliate Merola in front of his colleagues. In effort to end the bullying and ridicule, Merola decided to disclose the private and confidential details of his medical conditions to Munoz. Merola's candidness only served to exacerbate the bullying and hostility in the workplace, as now more and more of TCU's employees, Merola's co-workers and peers began to outwardly mock Merola. One such employee referred to Merola as a "p***y" in front of others belittling, harassing and embarrassing Merola. The hostile behavior, bullying, harassment, derogatory comments and mocking were not merely isolated incidents or petty slights; instead, it was systemic pattern of abusive behavior targeted at

Merola on the basis of his disabilities and requests for accommodation occurred almost daily. Any reasonable person in the same or similar situation would find the work environment hostile based on the conduct Merola endured. TCU had actual knowledge of the harassment and bullying and failed to act accordingly.

13. On January 28, 2020, Merola was provided with a Performance Management appraisal citing his multiple strengths, including: (1) taking initiative in communicating with and helping employees having difficulties…; (2) monitoring the phishing mailbox frequently, identifying spammers and phishers…; (3) addressing requests for multiple system requests; (4) serving as back up for other employees (David Kinch and Lenelda Pennington); and (5) strong foundation regarding general cybersecurity knowledge.

14. The following day, both of Merola's coworkers began bullying him regarding work related questions with other co-workers present. Their behavior was unprofessional and violated the TCU faculty and staff handbook. Merola reported the latest incident to his supervisor, Munoz. Munoz in turn discussed this report with both perpetrators, which then jeopardized Merola's anonymity as an employee. Munoz then directed Merola to apologize to his harassers. From that day forward, Merola's work environment became exceedingly stressful, due to the on-going marginalization, bullying and retaliation which took a toll on Merola's health every day.

15. Further, in retaliation for his reasonable accommodation request and out of sheer harassment and malevolence, Merola was tasked with additional responsibilities far outside the scope of his job duties and intentionally given more jobs than he reasonably could complete given his experience or skill level at that time, all without proper training or guidance regardless of any disability.

16. On February 7, 2020, David Kinch, appeared at Merola's cubicle without prior notice and began questioning his work. Kinch is not Merola's supervisor.

17. David Kinch then had Merola complete security analyst tasks outside of his standard work duties, which consisted of sifting through data logs in various security systems with tools that made it difficult for Merola to complete the job efficiently. Kinch said he would provide all the necessary training and tools to complete the job, but Merola was never provided said training and tools. Instead, Kinch would then complain when there were errors in Merola's work product as a direct lack of training and attitude of: "just figure it out". Merola was hired as an administrator/engineer to perform most of the configuration, installation, and maintenance of TCU's security systems.

18. The additional work demanded by Kinch was out of Merola's scope of work and work experience. Kinch would then go on to harass Merola behind closed doors as well as openly in front of other colleagues, amplifying the targeted discrimination, bullying, harassment and retaliation. All of which caused Merola great stress and emotional trauma while exacerbating his physical medical conditions.

19. On February 13, 2020, Kinch launched out of his chair shouted at Merola: "that is not how we do things here and never will!" In response to Merola's inquiry concerning disabling or removing an unnecessary firewall. Merola apologized for the question and swallowed his emotions for fear of fueling Kinch's tirade in full view of others in the office. Later that day, Merola brought is continued concerns to Munoz. Munoz acknowledged Merola's concerns and recognized the pattern of harassment and bullying had been on-going since the prior year. Merola re-urged the unreasonable treatment was affecting his mental health and job performance. Munoz advised Merola he would direct the concerns to human resources for guidance.

20. Lenelda Pennington and Aaron Munoz assigned Merola with application security secondary tasking which also required additional training and certain tools to perform the work. This was also out of Merola's scope of work since Pennington worked with the application development team to complete the tasking. Munoz directed Merola to only work on it with Pennington when time permitted. However, Pennington and Merola's schedules routinely failed to coincide thereby not allowing the two to work together often to complete this set of tasks. This scheduling issue, through no fault of Merola, prompted Pennington coming into Merola's office and harassing him in front of Terrie Harbour and Terri Robinet because Merola "didn't prioritize [her]". This outburst reduced Merola to tears. All of which caused Merola great stress and emotional trauma while exacerbating his physical medical conditions.

21. On February 6, 2020, another employee made a frivolous report about inadvertently viewing Merola's exposed backside in an effort to bully and harass Merola. Merola was then embarrassed and chastised over the incident. Which only served to cause Merola undue stress and emotional trauma while exacerbating his physical medical conditions and causing a deteriorating work performance.

22. On February 27, 2020, Plaintiff submitted a second Employee Accommodation Request Form pursuant to the Americans with Disability Act (ADA) to Martha Gonzalez. On the form, Plaintiff states: "I have fibromyalgia, connective tissue autoimmune, and peripheral neuropathy that are chronic and cannot be cured." With respect to how these condition(s) affect his ability to perform his job, Plaintiff stated: "Affects my body's ability to regulate temperatures, affects my energy levels, moods/emotional wellness, arthritis joint pains, numbness, tingling." Plaintiff simply requested he be able to "wear warmer more comfortable clothes and shoes to help with temperature regulation, ability to do some or all telecommute work."

23. On March 12, 2020, Munoz took Merola and their team out for lunch. What was supposed to be a fun outing was fraught with tension, anxiety and unease due to the tense behavior exhibited by Munoz toward Merola. Later that day, during the team meeting, Munoz made a point to address Merola's perceived short comings in front of the entire team. Munoz even gave Merola an ultimatum: become a "senior expert" in the next 30-60 days or his career at TCU would be terminated. This behavior was clear retaliation for Merola's earlier reports to Munoz regarding Kinch and Pennington's treatment of Merola.

24. On March 27, 2020, Plaintiff treating physician, a rheumatologist, submitted the requisite medical documentation to support Plaintiff's request for reasonable accommodation. Dr. Mustafa described Plaintiff's medical condition as "undifferentiated connective tissue disease, myalgia, arthritis" with and expected duration of "indefinite". Dr. Mustafa plainly stated "[Plaintiff] has pain in his feet and feels better wearing moccasins" for an "indefinite" period in response to what adjustments to the work environment would enable the employee to perform his job functions.

25. On April 7, 2020, Merola contacted Kirsten Taylor in TCU's human resources department to address his concerns. Little came of the meeting and Munoz, Kinch and Pennington's behaviors continued further causing Merola stress and anxiety.

26. On April 24, 2020, at approximately 8:30 a.m., during a phone conversation, Kinch yelled at Merola for failing to investigate an incident to Kinch's speed and accuracy standards.

27. Despite this difficulty in the absence of ergonomic equipment, as requested and substantiated by his healthcare provider, Merola continued to work to the best of his ability, but the continuous harassment and hostile work environment made it increasingly more difficult for him. Merola's education and work history show that he has the ability to work in a reasonable

work environment for long periods of time and complete tasks for which he is trained and prepared for.

28. Throughout the entirety of Merola's employment, TCU actively challenged his disabilities, requests for accommodation, and continuously made his work environment hostile. TCU failed to provide Merola his reasonable requested accommodations, failed to properly investigate the instances of bullying, harassment, retaliation and discrimination, all of which compelled his resignation on May 4, 2020. A reasonable person in the same position would have also felt compelled to resign.

29. Merola filed a charge with the Texas Workforce Commission and Equal Employment Opportunity Commission on or about October 12, 2020.

30. The Equal Employment Opportunity Commission issued its Determination and Notice of Rights on October 19, 2022.

## DISCRIMINATION BASED ON DISABILITY

31. Plaintiff incorporates all preceding paragraphs herein as if set forth at length.

32. Disability discrimination occurs when an employer or entity covered by the American with Disabilities Act ("ADA") treats a qualified individual who is an employee unfavorably because she has a disability. To state a claim for disability discrimination under the ADA, a plaintiff must show: "(1) that he has a disability; (2) that he was qualified for the job; [and] (3) that [s]he was subject to an adverse employment decision on account of [her] disability." *Moss v. Harris County Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017).

33. A disability is "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011) (quoting 29 C.F.R. § 1630.2(g)). Under the ADA, diabetes qualifies as a disability if it substantially limits one or more major life activity or that the plaintiff has a "record"

of the diabetes. See *Hearne v. AmWest Sav. Ass'n*, 951 S.W.2d 950, 953 (Tex. App.—Fort Worth 1997). Although having a substantially limiting impairment "is not meant to be a demanding standard[,] . . . not every impairment will constitute a disability within the meaning of [the ADA]." 29 C.F.R. §1630.2(j)(1)(ii). Indeed, even under the 2008 amendments to the ADA, a physical or mental impairment is a disability only if it "'substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.'" *Estes v. Town*, 2018 WL 1157787, *2 (N.D. Tex. Feb. 7, 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)) (emphasis added); *Walter v. Birdville Indep. Sch. Dist.*, 2018 WL 3974714, *3 (N.D. Tex. Aug. 20, 2018) (same); *Williams v. City of Richardson*, 2017 WL 4404461, *7 (N.D. Tex. Sept. 8, 2017) (same), *report and recommendation adopted*, WL 4351535 (N.D. Tex. Sept. 30, 2017).

34. In this instant matter, Plaintiff is an individual with a disability. Merola was diagnosed with degenerative lumbar disc, spinal stenosis, an autoimmune disorder and allergy-induced asthma. The condition affects Merola in that he is substantially limited in his ability to perform major and meaningful life activities such as walking any great distance, performing manual tasks, wearing certain types of clothing to maintain body temperature and comfort and working without accommodation.

35. Merola was qualified for his job on the basis of his education, training and experience, which is why TCU hired him. Merola performed his job for TCU from August 12, 2019 through May 4, 2020 without any complaint, write-up, reprimand, or disciplinary action as it related to the tasks and duties set forth in his job description and applicable to his position. There was no indication that Merola was not qualified to hold the position of Information Security Administrator IV at TCU.

36. Defendant was specifically aware of Merola's disability when he made his request for accommodation **two days** after beginning his employment **and** when he confided his immediate supervisor in an effort to eliminate the hostility and mocking, he faced purely due to his condition. Defendant was again on notice in February 2020, when he submitted his second request. In accordance with the ADA standard, Plaintiff did in fact have a disability.

37. On August 14, 2019, Merola submitted a request for accommodation to his supervisor, Aaron Munoz and Martha Gonzalez in TCU's human resources department to better complete his job duties and tasks, i.e., a protected activity. Merola advised that he had a herniated disc in his low[er] back and spinal stenosis and that he has autoimmune conditions. Merola further explained: "it does not allow me to be comfortable sitting, standing, and moving around for long periods without ergonomic equipment and close parking." Merola simply requested "ergonomic computer/desk equipment for office use and a reserved parking spot" as he already had a handicap placard issued by the Texas Department of Safety.

38. However, Merola never received the ergonomic equipment as requested. Instead, his medical conditions began to circulate amongst his colleagues and Merola began to face ridicule, bullying, and harassment in the workplace.

39. TCU discriminated against Merola for having a disability. Merola was subject to an adverse employment due to discrimination on the basis of his disabilities when he began receiving unwarranted feedback in direct opposition to previous performance reviews, incessant degradation, an increase in work tasks and assignments outside his normal scope of work and ultimately constructive discharge when forced to resign rather than continue to endure the hostile work environment, bullying, retaliation and harassment–all of which stemmed from his disabilities and their exacerbation due to TCU and its employees actions.

40. Defendant's actions clearly demonstrate discriminatory conduct towards Merola because of his disability. The adverse employment actions referenced hereinabove were a direct result of qualifying disability under the ADA. Therefore, Defendant discriminated against Plaintiff due to his disability.

## RETALIATION

41. Plaintiff incorporates all preceding paragraphs herein as if set forth at length.

42. To establish a prima facie case of retaliation under the Americans with Disabilities Act or Title VII of the Civil Rights Act of 1964, a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (Title VII); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999) (ADA).

43. TCU committed unlawful employment practices against Plaintiff because Plaintiff was engaged in activity protected under the ADA, Title VII and the Texas Labor Code, to wit: requesting a reasonable accommodation in the context of his documented disability and reporting the mistreatment, harassment, bullying and unfounded performance reviews to TCU's management staff and human resources department.

44. The effect of engaging in those protected activities drew the ire of Merola's immediate supervisor and colleagues which operated to deprive Plaintiff of equal opportunities, and otherwise adversely affect his status as an employee. Specifically, Merola was retaliated against in the form of increased scrutiny regarding his use of a handicap placard, and requests for reasonable accommodation. Then further increased scrutiny regarding his work performance with resulted in unreasonable and unfounded performance coaching for tasks and assignments unrelated

to the job in which he was hired for but were offloaded onto Plaintiff in an effort to secure his termination.

45. Plaintiff shows that the retaliatory actions taken against him were motivated by Plaintiff's requests for reasonable accommodation for his disability and again in response to reporting Munoz, Kinch and Pennington's unlawful behavior to TCU management and human resources. Plaintiff further alleges that the retaliation was committed with malice or with reckless indifference to the state and federally protected rights of Plaintiff.

## HOSTILE WORK ENVIRONMENT

46. Plaintiff incorporates all preceding paragraphs herein as if set forth at length.

47. Plaintiff asserts a violation of Tex. Lab. Code 21.051 under the Texas Commission on Human Rights Act (TCHRA). The code states:

> "An employer commits an unlawful employment practice if because of race, color, **disability**, religion, sex, national origin, or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee."

48. A hostile-work-environment claim is designed to address conduct that is so severe or pervasive that it destroys an employee's opportunity to succeed in the workplace. *Gardner*, 414 S.W.3d at 382 (citing City of Houston v. Fletcher, 166 S.W.3d 479, 489 (Tex. App. Eastland 2005, pet. denied)).

49. To succeed on a TCHRA claim of hostile work environment, the complained-of conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment." *Waffle House, Inc.*, 313 S.W.3d at 806 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

50. Plaintiff was subject to a severe and pervasive hostile workplace as a result of the severe and pervasive bullying, ridicule and harassment, including but not limited to consistent comments and remarks about his physical appearance, his disabilities, ridicule, , referring to Merola as "p***y", consistent aggressiveness by Munoz, Kinch and Pennington, and questioning his need to park in a handicap parking space; all of which were based upon Merola's disability creating an objectively hostile workplace affecting the terms and conditions of his employment and designed to hinder Plaintiff's ability to perform work functions. TCU had actual knowledge of the hostile workplace Merola endured when he made repeated complaints to his supervisor and human resources. Defendant failed to properly investigate or otherwise resolve this hostile work environment. The actions by TCU and its employees, or lack thereof, created an abusive working environment that that ultimately resulting in Plaintiff's constructive discharge.

## RESPONDEAT SUPERIOR AND RATIFICATION

51. Whenever in this petition it is alleged that Defendant, TCU, did any act or thing, it is meant that TCU's officers, agents, servants, employees or representatives did such act and/or that at the time such act was done with the full authorization or ratification of TCU or was done in the normal and routine course and scope of employment of TCU's officers, agents, servants, employees, or representatives.

## CONSTRUCTIVE DISCHARGE

52. TCU made the working conditions so intolerable that Plaintiff felt compelled to resign his position. A reasonable person in the same position would have also felt compelled to resign. Plaintiff suffered damages for which Plaintiff herein sues.

## CONDITIONS PRECEDENT

53. All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Petition is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## DAMAGES

54. Plaintiff incorporates all preceding paragraphs herein. As a direct and proximate result of the occurrence made the basis of this lawsuit and Defendant's acts as described herein, Plaintiff suffered damages including but not limited to the loss of income and earnings, mental and emotional suffering, and other damages as described herein or as may be prove at the time of trial.

## ATTORNEY'S FEES AND COSTS

55. Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by: (a) Section 17.50(d) of the Texas Business and Commerce Code; (b) Chapter 38 of the Texas Civil Practice and Remedies Code; and, (c) common law.

## JURY DEMAND

56. Plaintiff hereby requests a jury trial.

## PRAYER

Plaintiff prays that citation be issued commanding Defendant to appear and answer herein and that Plaintiff be awarded judgment against Defendant for actual damages, pre-judgment

interest, post-judgment interest, costs of Court and for all other relief to which Plaintiff is entitled both in equity and at law.

Respectfully submitted,

/s/ Ali Crocker Russell
Ali Crocker Russell
State Bar No: 24098868
Email: ali@cralawfirm.com
CROCKER RUSSELL & ASSOCIATES
2401 Callender Road, Suite 103
Mansfield, TX 76063
Office: (817) 482-6570
Fax: (682) 232-1850
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

On May 18 2023, I electronically submitted the forgoing instrument with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule Civil Procedure 5(b)(2).

/s/ Ali Crocker Russell
Ali Crocker Russell